UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and CHARLES A. WHOBREY, as Trustee, <br><br> Plaintiffs, <br><br> vs. <br><br> OUDENHOVEN CONSTRUCTION, INC., a Wisconsin corporation, WRIGHT-WAY STORAGE, LLC, and VERBETEN ENTERPRISES, LLC, <br><br> Defendants. | 20 C 887 <br><br> Judge Gary Feinerman |

**MEMORANDUM OPINION AND ORDER**

Central States, Southeast and Southwest Areas Pension Fund and its trustee brought this suit against Oudenhoven Construction, Inc., Wright-Way Storage, LLC, and Verbeten Enterprises, LLC, for payment of withdrawal liability under the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq*. Doc. 43. The Pension Fund moves for summary judgment. Doc. 73. The motion is granted.

**Background**

The court recites the facts as favorably to Defendants as the record and Local Rule 56.1 allow. *See Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

Oudenhoven was a construction company located in Kaukauna, Wisconsin. Doc. 81 at ¶ 1. Pursuant to a collective bargaining agreement with a union, Oudenhoven participated in and

1

had an obligation to contribute to the Pension Fund. *Id*. at ¶ 3; Doc. 80 at ¶ 10. In March 2016, Daniel Verbeten, the sole owner of Oudenhoven, wound up the business and permanently ceased its operations. Doc. 81 at ¶ 2; Doc. 81-1 at ¶¶ 3-6. The business's closure effected its complete withdrawal from the fund. Doc. 80 at ¶ 11.

On January 11, 2017, the Pension Fund sent Oudenhoven a notice and demand for payment of $597,074.43 in "withdrawal liability" due to its withdrawal from the fund. *Id*. at ¶ 13; Doc. 81 at ¶ 6. The notice stated that all businesses under Verbeten's common ownership—a group that includes Wright-Way Storage and Verbeten Enterprises—were jointly and severally liable for the withdrawal liability under the MPPAA. Doc. 75-2 at 7; Doc. 75-7 at ¶ 7; Doc. 80 at ¶¶ 12-13.

On January 31, an attorney for Oudenhoven spoke by telephone with Dan Shepard, a manager of collections for the Pension Fund, about the notice and demand for payment. Doc. 81 at ¶ 13; Doc. 85-1 at ¶ 1. According to Defendants, Shepard told Oudenhoven's attorney that Defendants did not need to make payments toward the withdrawal liability while any request for review of the withdrawal liability determination was pending. Doc. 81 at ¶ 14.

On March 2, Oudenhoven sent the Pension Fund a letter requesting a review of its withdrawal liability determination. *Id*. at ¶ 15; Doc. 80 at ¶ 15; Doc. 81-1 at 32-40. The letter outlined several defenses and objections to the determination. Doc. 81 at ¶ 16. The letter also purported to memorialize Shepard's statement to Oudenhoven's attorney, asserting: "Pursuant to our phone conversation on January 31, 2017, [Oudenhoven] is not currently required to make any payments toward the withdrawal liability assessed at this time, pending completion of the formal review requested herein." *Id*. at ¶ 17; Doc. 81-1 at 32.

The Pension Fund never responded to Oudenhoven's request for review. Doc. 81 at ¶ 21. While awaiting a response, Defendants did not demand arbitration under the MPPAA to contest the withdrawal liability determination. Doc. 80 at ¶ 17; Doc. 85-1 at ¶ 10. Defendants claim that they did not do so because they understood Shepard's January 31 statement to mean that they "did not need to make any payment or take any further action"—including making a demand for arbitration to dispute the withdrawal liability determination—until the Pension Fund responded to the request for review. Doc. 79 at 7; Doc. 81 at ¶¶ 19-20.

**Discussion**

Under the MPPAA, an employer that withdraws from a multiemployer pension plan must pay "withdrawal liability" equal to its proportional share of the plan's "unfunded vested benefits." *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 217 (1986) (internal quotation marks omitted). The payment of withdrawal liability ensures that a withdrawing employer's financial burden for benefits provided under a plan are not "shifted to the other employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits." *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1371 (7th Cir. 1992); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Bellmont Trucking Co.*, 788 F.2d 428, 432 (7th Cir. 1986) ("Withdrawal liability tends to compensate for the shrinkage of the contribution base that occurs when the number of employees on whose behalf contributions are made decreases."). For purposes of withdrawal liability, all businesses "under common control" are treated as a "single employer," *McDougall v. Pioneer Ranch L.P.*, 494 F.3d 571, 574 (7th Cir. 2007) (quoting 29 U.S.C. § 1301(b)(1)), and each such business "is jointly and severally liable for any withdrawal liability of any other," *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 876 (7th Cir. 2011).

3

To collect withdrawal liability, a pension plan must "determine the amount of withdrawal liability owed by a withdrawing employer and send the employer a notice and demand for payment of that amount." *Cent. States, Se. & Sw. Areas Pension Fund v. Bell Transit Co.*, 22 F.3d 706, 707 (7th Cir. 1994) (citations and internal quotation marks omitted). An employer that disagrees with a plan's withdrawal liability determination may "ask the plan to review its assessment" via a request for review letter. *Cent. States, Se. & Sw. Areas Pension Fund v. Ditello*, 974 F.2d 887, 888 (7th Cir. 1992). Arbitration is the only option for an employer who continues to disagree with the plan's determination and wishes to formally adjudicate the dispute. *See* 29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration."); *McDougall*, 494 F.3d at 574 ("[T]he MPPAA mandates arbitration proceedings."); *Ditello*, 974 F.2d at 888 ("Arbitration of any dispute concerning a plan's determination of withdrawal liability is mandatory.").

An employer wishing to contest a fund's withdrawal liability determination through arbitration must make a timely demand for arbitration. *See Ditello*, 974 F.2d at 888; *Slotky*, 956 F.2d at 1371-72. The demand must come within a 60-day period commencing at the earlier of two dates: (1) the date the plan responds to the employer's request for review of the withdrawal liability determination; and (2) the date that is 120 days after the employer's request for review. 29 U.S.C. § 1401(a)(1); *see Slotky*, 956 F.2d at 1371-72 ("[The employer] must initiate arbitration … within 60 days after the earlier of either the plan's response to the employer's initial complaint, or 120 days after the employer … requests additional information from the plan regarding the assessment."). In other words, the 60-day window for demanding arbitration commences when the pension plan responds to the request for review or, if the plan does not

4

respond, 120 days after the employer submitted the request for review. Harsh consequences follow an employer's failure to timely demand arbitration: the assessed withdrawal liability becomes due and owing; the employer waives any defenses it could have raised in arbitration; and the plan may sue to collect the withdrawal liability. *See Trs. of Suburban Teamsters of N. Ill. Pension Fund v. E Co.*, 914 F.3d 1037, 1039 (7th Cir. 2019) ("[A]n employer's failure to arbitrate means the plan can then immediately file suit to collect the entire amount of withdrawal liability, and in that proceeding the employer will have forfeited any defenses it could have presented to the arbitrator.") (internal quotation marks omitted); *Ditello*, 974 F.2d at 888 ("If an employer fails to timely initiate arbitration, the amount of withdrawal liability assessed by the plan becomes due and owing, and the plan can sue to collect it.").

  The Pension Fund maintains that it is entitled to summary judgment under this framework. Oudenhoven withdrew from the pension plan, subjecting it—and Wright-Way and Verbeten Enterprises because they are under common control with Oudenhoven—to withdrawal liability. Doc. 80 at ¶ 12. Oudenhoven responded with a March 2, 2017, letter requesting review of the Pension Fund's withdrawal liability determination. *Id.* at ¶ 15; Doc. 81 at ¶ 15. The Pension Fund did not respond to the request for review within 120 days, so Defendants needed to demand arbitration between June 30 and August 29, 2017 (the 60-day period beginning 120 days after Oudenhoven's request for review). Doc. 84 at 9. Yet Defendants have not demanded arbitration to this day, more than five years after the deadline. Doc. 80 at ¶ 17. The Pension Fund accordingly asks the court to hold that the full amount of the assessed withdrawal liability is due and owing from all three Defendants, jointly and severally. Doc. 74 at 9-11.

  Defendants do not dispute the Pension Fund's timeline, and they concede that they have not demanded arbitration and that they are jointly and severally liable for any withdrawal

5

liability.  Doc. 80 at ¶ 12; Doc. 81 at ¶ 18; Doc. 84 at 1.  Defendants instead respond that the Pension Fund is equitably estopped from arguing that they failed to timely demand arbitration.  Doc. 79 at 8.  As an initial matter, it is unsettled whether equitable estoppel is a defense available to an employer in suits brought by multiemployer pension plans.  *See Laborers' Pension Fund v. W.R. Weis Co.*, 180 F. Supp. 3d 540, 555 (N.D. Ill. 2016) ("[I]t is not yet clear whether equitable estoppel is an available defense in an action involving a multiemployer pension plan."); *Hancock v. Ill. Cent. Sweeping LLC*, 73 F. Supp. 3d 932, 943 (N.D. Ill. 2014) (explaining that the Seventh Circuit has not "explicitly approved [equitable estoppel] as an affirmative defense in an action brought by a multiemployer plan against an employer"); *see also Black v. TIC Inv. Corp.*, 900 F.2d 112, 115 (7th Cir. 1990) (noting the concern that recognition of the defense could shift financial liability to other employers).  The court puts that uncertainty aside and assumes that equitable estoppel is a defense available to Defendants.

Equitable estoppel "arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 648 (7th Cir. 1993) (quoting *Black*, 900 F.2d at 115); *see also LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000) ("[T]he traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel.").  Defendants maintain that equitable estoppel applies here because they did not demand arbitration in reliance on Shepard's statement to Oudenhoven's attorney on January 31, 2017, that no payment was necessary while the request for review was pending.  Doc. 79 at 9-11.

6

Defendants' argument fails because it was unreasonable for them to rely on Shepard's statement in failing to demand arbitration. As noted, the MPPAA provides that an employer must timely demand arbitration even if a pension plan does not respond to a request for review. *See Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899, 901 (7th Cir. 1988) (holding that the limitations period to demand arbitration begins to run if a pension plan does not respond to a request for review within 120 days); *Cent. States, Se. & Sw. Areas Pension Fund v. Louisville Auto Rail Servs., Inc.*, 67 F. Supp. 2d 933, 935 (N.D. Ill. 1999) (rejecting the argument that an employer need not demand arbitration until it receives a response to a request for review); *see also PACE Indus. Union-Mgmt. Pension Fund v. Troy Rubber Engraving Co.*, 805 F. Supp. 2d 451, 460 (M.D. Tenn. 2011) (explaining that the MPPAA "creates a 180-day period following the request for review in which the employer may seek arbitration, even if the plan sponsor does not respond to the request"). By Defendants' own account, Shepard said only that no *payment* was necessary while their request for review was pending. Doc. 79 at 9. That is, Shepard said nothing about *arbitration*, providing Defendants with no reason to believe that they did not need to timely demand arbitration of their withdrawal liability dispute with the Pension Fund.

Defendants argue alternatively that the deadline to demand arbitration should be equitably tolled. In appropriate circumstances, the deadline for demanding arbitration to contest withdrawal liability may be equitably tolled. *See Trs. of Chi. Truck Drivers Union (Indep.) Pension Fund v. Cent. Transp., Inc.*, 888 F.2d 1161, 1164-65 (7th Cir. 1989) (holding that the deadline to demand arbitration to dispute a withdrawal liability determination was equitably tolled); *Banner Indus., Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 875 F.2d 1285, 1293-94 (7th Cir. 1989) (same). A party seeking to benefit from equitable tolling generally must show that it "diligently" pursued its claim but that "some extraordinary circumstance" stood in

its way. *Blanche v. United States*, 811 F.3d 953, 962 (7th Cir. 2016) (quoting *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012)). As the Seventh Circuit has explained in the ERISA context, "[a]ll equitable tolling means is that a person is not required to sue within the statutory period if he cannot in the circumstances reasonably be expected to do so." *Slotky*, 956 F.2d at 1376.

In Defendants' view, the deadline to demand arbitration should be equitably tolled due to Shepard's statement to Oudenhoven's attorney that no payment was necessary while their request for review was pending. Doc. 79 at 11-12. The argument fails for the same reasons as the equitable estoppel argument. Shepard said nothing about arbitration, and the MPPAA specifically requires an employer to arbitrate even when a pension plan does not respond to a request for review. The record therefore cannot show, even when viewed in the light most favorable to Defendants, that they diligently pursued arbitration or that some extraordinary circumstance prevented them from doing so. Accordingly, their equitable tolling argument fails.

Defendants submit that this conclusion conflicts with *Central States, Southeast & Southwest Areas Pension Fund v. Premarc Corp.*, 1994 WL 457170 (N.D. Ill. Aug. 22, 1994). Doc. 79 at 11-12. In *Premarc*, the plaintiff pension plan responded to the defendant employer's request for review of a withdrawal liability determination, thereby triggering the 60-day window for initiating arbitration. 1994 WL 457170, at *1. The employer did not learn of the response letter, however, because its law firm lost it. *Ibid*. Later, the employer asked the pension plan for an update on its request for review. *Ibid*. The pension plan, now aware of the employer's misunderstanding that its request for review was still pending, intentionally chose not to correct that misunderstanding. *Id*. at *2. The employer subsequently made a demand for arbitration that

8

would have been timely if, as the employer believed, the pension plan had never responded to its request for review. *Id*. at *2, *5.

*Premarc* held that the pension plan's silence in the face of what it knew to be the employer's misapprehension was tantamount to "active concealment" hindering the employer's ability to arbitrate. *Id*. at *4. On that basis, the court held that the deadline to arbitrate was equitably tolled. *Id*. at *4-5. That holding is inapposite here, as the Pension Fund did not hinder Defendants' ability to timely demand arbitration. Rather, the Pension Fund simply did not respond to Oudenhoven's request for review, a scenario that, as noted, does not excuse Defendants from timely demanding arbitration. *See Louisville Auto Rail Servs.*, 67 F. Supp. 2d at 935-36 (holding *Premarc* inapposite and denying equitable tolling on similar facts).

Because Defendants' equitable estoppel and equitable tolling arguments fail, and because Defendants present no other arguments in opposition to summary judgment, the Pension Fund is entitled to summary judgment.

## Conclusion

The Pension Fund's summary judgment motion is granted. Defendants are jointly and severally liable for $597,074.43 in withdrawal liability to the Pension Fund. The Pension Fund maintains that it also is entitled to an unspecified amount of attorney fees, costs, statutory damages, and interest, Doc. 74 at 13, 14 n.6, and it has until November 18, 2022 to file a motion to recover those amounts.

November 7, 2022

_____
United States District Judge